Dimitrios SPANOS, Libellant,

v.

THE Steamship LILY, her engines, etc., and Fortaleza Compagnia Naviera, S.A., of Panama, etc., Respondents.

No. 7807.

United States District Court
E. D. Virginia.
Norfolk Division.
Feb. 28, 1958.

Sidney H. Kelsey and Peter K. Babalas, Norfolk, Va., for libellant.

Vandeventer, Black & Meredith, Norfolk, Va., for respondents.

WALTER E. HOFFMAN, District Judge.

Libellant, a citizen of Greece and a seaman on board the vessel Lily, flying a Liberian flag and owned by a Panama corporation, was injured while aboard the vessel on January 7, 1957. The libel, prepared by an experienced and able proctor, makes the following recitation of events:

"That on January 7, 1957, while the vessel S. S. Lily was docking at her pier at Newport News, Virginia the libellant, a carpenter on said vessel, was ordered to assist in the anchoring of the vessel by the dropping of the anchor; that due to the negligence, carelessness and wrongdoing on the part of the respondents, the officers and members of crew of said vessel, and further due to the unseaworthiness of said vessel, libellant was caused to sustain serious and permanent personal injuries, all without fault on his part, in the following manner:

"Previous to libellant's injuries, the deck plates had large quantities

of oil and grease which had been allowed to accumulate; that the libellant, who was a carpenter, was ordered to aid in the lowering of the anchor to dock the vessel; that an officer of the vessel directed the operation of said undertaking; that the brakes controlling the anchor cable gave way without warning, causing the libellant's left leg to be caught by the anchor cable, seriously and permanently injuring his leg."

■ The testimony of libellant presents a factual situation completely foreign to the foregoing allegations. True, libellant should not be held strictly accountable to the facts as recited in the libel, but proctors for libellant must have received some information from their client to justify such allegations. One of these proctors speaks Greek fluently and the language barrier does not exist in this case. The allegations of the libel may be considered in determining the credibility of libellant's testimony where, admittedly, the information was received from libellant and not from an independent investigation.

Contrary to the allegations of the libel, libellant states that the vessel had stopped at Newport News and he had gone to get the anchor ready; that he permitted the anchor to go down to the surface of the water and went to release the brake; that the brake was broken, the chain slipped, and the anchor dropped prematurely; that libellant, fearful that the chain would fly back and strike him, endeavored to leave and slipped and fell down. He further states that the accident occurred at 11 a. m. on January 7, and he believes the vessel went to the shipyard at Norfolk the following evening but, in any event, he was in bed when the ship docked at Norfolk. It is libellant's contention that the chief mate was the only other crew member in the locality when he sustained his injury, and that the mate saw the accident and told him to go to bed.

Respondents' evidence is in form of depositions of the chief officer (Theodorou) and master (Kulukundis). This testimony conclusively establishes that the vessel never went to Newport News on the trip in question, although it did anchor off Fort Monroe in the morning and off Sewells Point in the afternoon, before proceeding to drydock at approximately 6:30 p. m. that evening. Theodorou stated that libellant was at the windlass where the chains and anchors are found, when the vessel approached the dock at Norfolk. He denies any knowledge of any injury until immediately after docking operations had been completed. He stated that libellant's duty was to stay by the windlass in order that he could open and shut the steam to enable the other men to pull the lines and tie up the ship. There was no use of the anchor at this particular time. According to the chief officer, libellant told him, "I hurt my foot there by the pump, but exactly how I do not know."

An entry in the log indicates that the accident occurred at 1850 (6:50 p. m.) on January 7, 1957. The master did not see the accident as he was on the bridge at the time. He visited libellant in his quarters following the accident and it was at first thought that his injury was merely a strain, and not a broken bone in his foot as later revealed by x-rays. Contrary to libellant's assertion that he was required to continue working, the preponderance of the evidence is to the effect that he did no work thereafter.

■■ The discrepancies as disclosed by libellant's testimony lead to the belief that the injury was sustained while the vessel was docking at Norfolk when the anchor was not in use. The cause of such injury is unknown—certainly there is no proof that it was brought about by any unseaworthiness or operating negligence on the part of the vessel or its crew. Libellant has failed to meet the burden imposed upon him. The Court rejects libellant's statement that the accident occurred during any anchoring op-

erations at Newport News or off Fort Monroe. The log entry and the testimony of the chief officer and master lead to the conclusion that the injury was sustained during docking operations at Norfolk when libellant was working—at a time when libellant contends that he was in bed. The pattern is plain—libellant is seeking to recover compensation for injuries received on board a vessel, but not due to unseaworthiness or operating negligence. In his efforts to accomplish this purpose, he recites one set of facts in his libel and a contrary statement by his testimony. While recognizing that a seaman is the ward of admiralty, this does not suggest that courts should accept statements believed to be incredible in an effort to permit recoveries for ordinary accidents not resulting from unseaworthiness or negligence.

■ It is contended that respondents failed to provide prompt and adequate medical attention. Admittedly there was a delay of five days before libellant was sent to a physician, but this is explained by the fact that all parties thought the injury to be a mere strain and this was at first confirmed by the initial medical report of x-ray. Moreover, libellant did not indicate any desire to see a physician at an earlier date. Libellant's first and third causes of action are dismissed.

■ Nor is libellant's claim for wages and penalties entitled to any greater consideration. According to libellant, his demand for wages took place on January 15, 1957, at which time there was due to him the sum of $266.79. This amount, plus penalties, was paid to his proctors several days thereafter. Libellant contends, however, that he is still due the sum of $60.20 for overtime which, if unpaid, would be subject to the penalty provisions as provided by law. Libellant kept no record of his overtime, nor does he state when it was earned, or under what circumstances. The wage account does not support libellant's testimony and, without more, the burden has not been met. Libellant's second cause of action is dismissed.

Libellant's fourth cause of action seeks no monetary recovery of damages but merely asks equitable relief to prevent his removal from the hospital. This question is now moot.

■ As to maintenance and cure, libellant is entitled to recover under the fifth cause of action. He incurred a bill at Norfolk General Hospital in the sum of $13, a bill to Dr. John A. Vann in the sum of $35, and a bill to Dr. Asher A. Friedman in the sum of $10. He is entitled to maintenance for the period beginning February 1, 1957, when he was released from the hospital, to and including April 1, 1957, when he signed on board another vessel. The rate of maintenance is fixed at $8 per day.

■ There is some evidence that all of libellant's personal effects were not delivered to him at the hospital. He submits a list written in Greek and not translated which aggregates $193. The vessel remained in port until January 20, 1957, and on January 16 a list of libellant's effects was prepared and delivered to the agent for transmittal to libellant at the hospital. This list is also written in Greek and not translated, and it is not possible for the Court to determine when the effects were actually delivered to libellant. With no opportunity to compare the lists and with no evidence of any complaint prior to the departure of the ship, the Court cannot accept a list written in Greek and not translated as sufficient proof of loss of personal effects or the value thereof.

A decree will be prepared in accordance with this opinion, which is adopted by the Court in lieu of specific findings of fact and conclusions of law, in accordance with the provisions of General Admiralty Rule 46½, 28 U.S.C.A., and, after endorsement by proctors, the decree will be submitted to the Court for entry. Libellant shall recover his taxable court costs.